Thank you. Good morning. The clerk informs us that council are ready in Disability Rights New York v. State of New York. So we'll hear from the appellant. May it please the court. My name is Jennifer Monthe. I represent Disability Rights New York. Disability Rights New York has representational standing to bring claims in its own name on behalf of individuals with disabilities who have suffered rights violations, abuse, and neglect. Specifically authorized by Congress, DRNY may seek appropriate remedies on behalf of individuals with intellectual and developmental disabilities by the application or imposition of Article 17A of the Circuit Court Procedure Act. Congress, by legislation, may expand standing to the fullest extent permitted by Article 3. So Disability Rights New York need only allege a case in controversy in order to have standing to bring this claim. Is the idea that you're something like a guardian yourself, asserting the rights of the various disabled people? No, I would not describe Disability Rights New York as a guardian. I would say that Congress created an entity who has to protect and advocate on behalf of the people it charges it with serving. So we don't remove that person's rights. We're there to express that person's rights as their representative. But you're acting as their representative in much the same way  Sure, but we don't have to terminate someone's decision-making rights, a person with an intellectual or developmental disability, or any disability, in order to serve in that role. That person could guide that representation, guide the entity, in terms of the rights it wants to... But that's exactly sort of what I'm getting at. You're bringing this suit, it seems like, without consulting any of those individual people, and indeed without even mentioning any individual disabled person on whose behalf you are litigating. You're litigating on behalf of the class of disabled people. Sure. I would, I guess, disagree with you in terms of consult, if that is the word. Well, there's no allegation in the complaint that I noticed, maybe there is something, but I didn't notice one, that says that these various people are the sort of people we're talking about and they've played some role in this litigation. Right, because Congress doesn't require us to allege those things in order to have standing to bring those claims. Congress looked at... Is there any allegation of injury to any individual? There's an allegation to many individuals. Yes, the injury is that you have an unconstitutional statute Have you identified any individual who has suffered an injury? We don't allege a specific individual in the complaint because we're not required to allege a specific individual in the complaint. Instead, Congress said bring claims on behalf of people with disabilities and we say this statute on its face, just applying the statute, because it doesn't require notice, because it doesn't allow for an attorney, because it doesn't allow for a hearing. The application of the statute on people with disabilities is the injury that occurs and we know, there's no dispute, that the state is using this... What about the abstention issue? Before we get there, one other question. So would it be constitutional for Congress to say we're going to commission the ACLU to bring lawsuits on behalf of anybody that it thinks is having his or her First Amendment rights violated? Yes. To expand on that, Congress may designate a representational relationship through statute. It has to be a specific relationship, but they can designate that relationship. The only thing that is required in order to meet standing is Article 3 and Article 3 requires that case of controversy and that... Would Congress pass a statute to say that any citizen could bring a lawsuit on behalf of anyone else that that person thinks is having his First Amendment rights violated? Through statute, Congress, yes, can expand standing to identify a representative on behalf of... What authority is there for that proposition that Congress can bestow standing on someone or entity that hasn't actually suffered an injury? So it isn't on behalf of an entity that hasn't suffered an injury. It is that Congress can create a representational standing, and the support for that, the Supreme Court identified that in United Foods. They said that a representational relationship can exist through statute and does exist through other statutes, allowing for an entity or corporation or anyone to, through that statute, bring claims on behalf of a specific person or persons when it demonstrates that those person or persons are injured. Do you need to go that far for this case? I might have thought, for example, and that's why I raised the guardianship analogy, that the people that Congress has assigned you to protect are, by definition, and by the state's own scheme, deemed to be people who would have great difficulty in advancing their own interests, which would not be the case in some of the hypotheticals that have been posed. So I didn't understand your question. So do we have to go that far in that way? In order to have standing in this case and to sustain the constitutionality of Congress's judgment, would we need to go so far as to say that Congress could just let anybody bring the paradigm kind of suit that the Supreme Court has generally said is the essence of not having standing? I don't think you have to go that far because of how articulate Congress was in creating this system and the rationale behind the creation of the protection advocacy system. And we can't forget that at the time, the population of people that they were looking at were that population that you described, unable to bring their own claims, were abused, were neglected, and did not have access to justice. They wanted to remedy that problem of you system, go find abuse and neglect, but then what happens? No one can step forward to the court system and say, well, I want my rights to be protected. We need to charge someone with that responsibility. And they charged the protection advocacy system. How exactly do you qualify? How exactly did Congress bestow this boon on you? So they bestowed it upon us through the Developmental Disabilities Bill of Rights Act and the Protection and Advocacy for Individuals with Mental Illness Act. Both of them we call the Protection Advocacy Acts or the P&A Acts. And in those two statutes, the first, the Developmental Disabilities Bill of Rights Act, they said the protection advocacy system has to have the authority to pursue legal, administrative, and other remedies to ensure the protection of and advocacy for individuals with developmental disabilities. They used almost identical language in the PAMI Act, saying that the P&A system have to pursue administrative, legal, and other remedies on behalf of individuals with mental illness. Congress required the states to set up organizations like yours precisely for that purpose. Exactly, exactly. Congress, well, they put a carrot. As a condition of getting... Right, they put a carrot. They said if you want to have this money, you need to set up this system. And the states acknowledged that they wanted that money, and they set up the system, and the system has been operating like that. And to further the point of Congress, while we don't think it's necessary, the regulations that are used to interpret this statute clearly say to bring claims, lawsuits, in their own right on behalf of people with disabilities. And what I find, you know, that we're arguing about this when, you know, the P&A system, after a couple of decades of using this authority and bringing claims in its own right across the country, because there's a protection advocacy system in every state and territory in the country, came back to Congress because it said, we're using these scarce resources to define whether we have the authority to bring claims on behalf of other people. And we'd really prefer if you could make that much clearer. And Congress, through their testimony in 1994, said it's very clear, the current statute is clear in its face, that the protection advocacy system has the authority to bring claims in its own right on behalf of people with disabilities. And that was forefront in their mind. So there is no question that this is what the intent of Congress is. And because the Supreme Court in the United Foods case said that Congress can do this if there's a case in controversy, we're turning to just the question that you raised, Your Honor, about injury. And injury in this case is about whether an individual, just by the application of Article 17a, is injured when they're not afforded constitutional rights through that process, meaning they're not given an opportunity to meaningfully defend themselves against that guardianship statute. Let's turn to the issue that I'm obviously giving you some additional time. I'm happy to do so. The issue that really brings us here, if we assume standing, what about the problem of younger abstention? Disability Rights New York's complaint doesn't trigger younger because we're not asking for a federal court regulation of the guardianship process. We're not challenging a specific order. And we're not challenging the process for which the state courts enforce those orders. What is the remedy that you ultimately would seek from the federal courts in this litigation? A declaration that this statute violates the Constitution. And so that declaration doesn't interfere with any specific order or even an existing order that's in place. We also sought the idea that if you're going to declare the statute to be unconstitutional, that someone should be able to be notified if they're being placed under a guardianship. How is this different from O'Shea? There was a similar request to stop the state courts from enforcing the criminal laws in a discriminatory manner, in an unconstitutional manner. How is this different? Respectfully, in the O'Shea decision, the court said that the plaintiff there or the party there was not seeking to strike down a single statute. We are exactly looking to strike down a single statute. Instead, they wanted this ongoing review about how the statute was applied within the court system. There would be no ongoing review. The federal court could say this statute violates the Constitution. You're also suggesting that instead of Section 17A, that the other procedure of what is this, Section 80, should apply. What we are asking us, in essence, to order the state court system to follow a guardianship procedure that conforms to the more rigorous Article 81 procedures. So first and foremost, we're saying declare that the statute is unconstitutional. Second, we say if the state court wants to apply this statute constitutionally, then they need to do so. And we feel that the federal court could articulate how you apply the statute constitutionally. So, for example, if the federal court were to decide that an appointment of guardianship is required to be constitutional, we think that the state court could, in fact, appoint a person that's in a guardianship proceeding a lawyer without an ongoing review of the federal court system. So under the Article 81 procedure, would that apply to the people who are currently covered by Article 17A, or are they excluded from the 81? So under the 81 procedure, you have two pathways of guardianship. So under the 81, you are entitled to an attorney. Right. No, no, no. I'm asking who is covered by it. In other words, Article 17A is limited, as I understand it, to people with intellectual and developmental disabilities. Article 81 is broader. Are people with intellectual and developmental disabilities also subject to guardianship under Article 81? Is that an option that a parent, for example, could pursue? Yes, that's an option. It is an option. So then you're not necessarily suggesting that Article 17A needs to be rewritten by the federal court. You're really saying just if you strike it down, then the only thing that will be left will be 81A. Precisely. The only thing left will be Article 81. And what exactly is the injunctive relief that you seek? You're asking for a declaration of the unconstitutionality of this statute, but you're also asking for injunctive relief. So pursuant to the injunctive relief, what we're asking for is notice to those that have been placed under Article 17A guardianship that they might have an opportunity to seek the review of that guardianship under an 81 framework and to be able to say, okay, I didn't get an attorney the first time around. I didn't get notice that this was a guardianship proceeding that was going to be placed over me. I didn't get an opportunity to tailor that guardianship. That 81 process affords them that opportunity, and the only injunctive relief that we seek is notice that they were in fact placed under a guardianship that has been deemed to be unconstitutional. Who's the I there? In other words, in what you just said, so the person who is under the guardianship gets notice. That notice is presumably sent to the person via the guardian, right? It may be, or it may be sent to the person. There is a presumption. So it was sent to the person. If the person can invoke his or her rights, has the capacity to do so, they could do that now. They could bring a lawsuit like this one. If the assumption is they mostly can't, then that notice provision seems a little bit empty. Well, I think that whether you – I don't think just because you can read a notice means that you have the ability to invoke your rights under the statute. Well, right, but if the person can read the notice today and they can't invoke their rights, then your notice is kind of useless. Well, if they would invoke their notice today and come back in front of the surrogate court to try to challenge their guardianship, they would still be left with the framework of Article 17a, which is not to have an attorney to represent them. If they're given a notice, you can have an attorney to remove the guardianship you're under, then the notice is a – I guess it's not our business at this point whether the notice would be valuable or effective, and maybe it's also not ripe really to decide whether you could get injunctive relief. I mean, if you have a valid claim for a declaration that hypothetically at least, assumed for the sake of the argument, would not trigger younger abstention, then don't you get to go forward with your lawsuit and some later day a court may decide that it's not within its powers or it's not equitable or it's not appropriate to give the injunction? Sure. Our claim shouldn't fail on the declaratory relief because the court has some concern with injunctive relief. The district court can tailor the relief sought here to meet the needs of whatever we're able to prove through the lawsuit. This is, as you said, this is the pleading stage. We've asserted a claim through that pleading, and so we firmly believe that even on the declaratory relief, we should be able to move forward. It doesn't offend younger. But surely your interests don't end there. If you had such a declaration, you would still have, I would guess, you would have a continuing interest in securing the relief you seek, and you can only get that through an injunction. What if you're unhappy with the state's response? The state is not going to be happy with a declaration of the sort you seek, and let us assume you're not pleased with the way the state responds. Meaning that the state court continues to use Article 17a and violate the declaration that it is unconstitutional? They may find that the declaration is inadequate, is vague in some respect, doesn't cover something else. You know what I'm getting at. Obviously, you're seeking to have a continuing supervisory role over the state system. Respectfully, I would say we are not seeking that. We have full faith in our court system to be able to read a federal order which declares a statute unconstitutional and says don't use it anymore. I don't think that you have to be, that's not a vague order. The order is you can't appoint guardianships under this statute. Not enough faith to go to the state court in some particular case where Article 17a is being invoked and seek to intervene and argue that it may not be invoked against that particular actual human being who is being placed under guardianship. That's not, in terms of faith in the process, they're using, you know, we can seek a federal court's interpretation of the Constitution as a plaintiff in this case and we don't have to rely upon the state court's interpretation of the federal Constitution. So I agree with you. Not enough faith to say we wouldn't prefer the federal courts interpret their, the federal Constitution versus our state court. But an order which directs, by the federal court system, which directs the state to not use a statute doesn't seem to me to be anything that's vague. I understand that the vast majority of these cases are uncontested and involve children. What the relief you're asking would disrupt the system and change it from something where the legislator apparently wanted to make it accessible to lay people to something that's going to require lawyers and suddenly it's a lot more contested. And isn't that a request that we revamp the guardianship system? Respectfully, no. That it is easier for parents does not mean it doesn't violate the rights of these, you call them children, but these are adults. So these adults that come before them, that you have an easier process on the backs of these individuals. We won't give you due process because we want to make it easier for your parents to get guardianships over them. Yes, that's the process we're asking to disrupt. Because if a person is represented and when they're... It's not an issue in the vast majority of the cases, as I understand it. And suddenly you're putting in much more rigorous procedural requirements is what you're suggesting. I would respectfully dispute the vast majority of cases. We don't know that. Without the right to notice, without the right to defend against a guardianship, the process works like this. I'm walking down to the courtroom. I don't even know. I'm actually not even allowed to come down to the courtroom. I might not even have a hearing and be present at it. Somebody has a piece of paper from two physicians which I have never consented to them filling out on my behalf. They walk down with another sheet of paper that says that they want to make decisions for me from now into my future. And I am never told that I'm about to have a guardianship. Just as they're not told that you are bringing this lawsuit on their behalf. I think that in terms of bringing lawsuits on their behalf, I think that they do know who Disability Rights New York is and that we do tell the population of people. Really? I didn't know. I guess I didn't know because I had a case in the district court brought by disability advocates once. But this is hardly something that is common knowledge. That A, there is such a thing as standing. B, that the standing rules have been adjusted by Congress in this particular case. Or C, that there is this particular organization that's bringing a lawsuit on behalf of people with intellectual and developmental disabilities. I think you could say that in each of the representational circumstances. I understand that. But you are taxing the parent who seeks guardianship because they can walk into court and bring a lawsuit without notice to various individuals, which is, it seems to me, exactly what's happening here. But we're taxing, if we're taxing the parents without notice, the right that's being fundamentally violated is not the parents in this circumstance. No, but you're saying the problem is these people get to just come into court and bring a lawsuit without any notice to the people who are affected. And all I'm saying is that's what you're doing. You're bringing a lawsuit on behalf of people who have no idea that you're bringing that lawsuit on their behalf. Sure, and I would turn you to, that's what Congress told us to do. And the state legislature told the parents or other people seeking guardianship that they can do it. Right, one violates the Constitution, one we're arguing doesn't violate the Constitution. So one requires that Congress have the authority to do this and designate a representative. One doesn't say that because I'm a parent, I no longer have to afford constitutional rights to my child once they reach the age of 18 because they have an intellectual or developmental disability. That's the difference here. Thanks very much. We'll hear from Mr. Grubbe. Did I pronounce that correctly? Grubbe. Grubbe, sorry. What have you got to say for yourself, Mr. Grubbe? May it please the court. Mark Grubbe for New York State, the New York State court system. The chief judge of the state of New York and the chief administrative judge of the state of New York who have all been named in this complaint as defendants, which seeks an injunction upon those defendants to promptly hold a proceeding regarding termination or modification of any existing Article 17a guardianship order at which the burden of proof shall be clear and convincing evidence and which will provide substantive and procedural rights that are no less than those provided by Article 81. Suppose we said that the injunction was just flat out unavailable. And all that was left was the declaration. Would there still be a younger abstention problem in that case? There still would be a younger abstention problem because the declaratory relief, the necessary corollary of that is what is going to come after that and how can you enforce that? And this court in Kauffman, where the plaintiff made a similar argument saying, I'm only seeking to have the procedures for assigning appellate panels voided and the state can do whatever it wants to do. And this court said that that was of no moment because inevitably the state court would have to come up with new procedures and those procedures would be subject to piecemeal challenges where plaintiffs who do not agree that they are getting the particular notice of Article 81 or any of the panoply of procedural rights could go to a federal district. Are we assuming then that the state courts would just say, you know, the Second Circuit has made its decision, now let them enforce it? We're just going to go ahead and continue doing what we were doing? No, I'm certainly not suggesting that. Article 81. but sues the parents to enjoin them from bringing an action under Article 17A. Would younger apply there if there is no state court suit yet? Right, that's sort of a different scenario, I think. But what I'm saying is, would that not result in a declaration, if they were successful on the merits, that the statute is unconstitutional and an injunction against those particular parents, but then the state would be in the same position, would it not? If the next parent came along in a different case and brought another suit under 17A, wouldn't the state courts then have the same issue of following or not following the federal court's ruling that they can't use 17A? Well, I guess what I think it comes down to is that the surrogates have an amount of discretion, and what this would do would be it would impact the discretionary decisions that surrogates make, which is similar to what the Supreme Court said in O'Shea, you cannot do, is that they have discretion in terms of, one of their arguments is that Article 17A should be restricted to the least restrictive alternative, and certain surrogates have, in exercising their discretion as to whether something is in the best interests of a disabled individual, have dismissed Article 17A proceedings and say, that's not in their best interests, go to Supreme Court, a completely different court with different procedures, and seek an Article 81 guardianship there. So what they're really seeking is sort of controlling the discretion of surrogates in a way that— And then the surrogate can do whatever she wants. And maybe she'll be generous to the rights or the interests of the person affected, and maybe not. But what they're saying is, the whole system is unconstitutional if it doesn't give notice and an opportunity to be heard, and maybe a whole bunch of other things like free lawyers and whatever, to the person whose interests are affected. Well, I mean, as a preliminary matter, respectfully, I think that's an inaccurate characterization of the statute. They're presumptively entitled to a hearing. And then the surrogates, if they are—if they conclude that a hearing is not in the best interest because the individual is so dysfunctional or unable to participate, then the court—the surrogate, in his discretion, can say that the hearing does not have to go forward. But this is not—this is a scenario where, presumptively, there is a hearing for people getting Article 17a guardianships. So I had the Megan's Law case as a district judge, the sex offender statute, and there was an ex post facto claim, but there was also a due process claim that actually is very similar to the one here. There weren't sufficient protections in the procedures that had been established, including the right to write to counsel, and therefore, the statute did not comport with due process. What's the claim? The state did not, in defending the case, argue abstention. Any thoughts on how this is different? Is it different? I am not completely familiar with that. I know the law, and I'm not sure what the reasoning was for not invoking abstention. But I can say that these various procedures that we're talking about here—this court in Wallace v. Kern, other circuits in Pompeii v. Broward County—all of these similar concerns about whether counsel should be appointed, what the administrative forms are for initiating a petition, notification of rights, burden of proof—these are sort of all things that have sort of fit into the scenario in those cases where the court said this is really seeking to overhaul an entire procedural system in violation of OSHA. How exactly would the system be overhauled? Do I understand that effectively this would place these matters before the Supreme Court as opposed to the surrogates court? That could be the effect of it. If they're enjoining surrogates from pursuing under Article 17a, there's no other proceeding for guardianships in the surrogates court. So people pursuing guardianships would have to go to Supreme Court and seek guardianships under those provisions that are more burdensome and expensive and not sort of tailored to the needs of the intellectually and developmentally disabled. It looks like an ongoing federal audit—not more than an ongoing federal audit—it would be a reorganization of the state judiciary. Well, I'm still puzzled as to how that would differ from my hypothetical case in which a federal court is asked on behalf of some individual affected by the guardianship just to say in that very litigation to argue that this statute is unconstitutional, it can't be applied against me. And if the court—if the surrogates court decided that as a matter of federal constitutional law, the result would be the same. And if somebody came in affirmatively to the federal district court in a situation where there is not yet pending an action, which might invoke different younger considerations, and sought a declaration that this statute is unconstitutional, I'm just having trouble understanding why that would be—the fact that the unconstitutionality of the statute means that the surrogates court is deprived of a function suddenly invokes younger— It's an area of—specialized area of state law and a specialized court where there's a substantial state policy that the plaintiff would be trying to interfere with the state's development of that policy. So the doctrines have— It's unconstitutional. It's unconstitutional. I mean, if you had a separate court for African Americans and somebody said you can't do that because that's unconstitutional, you'd be saying there's a Burford question? What does Burford have to do with it? What would younger have to do with it? I mean, something like that might be so extreme. I don't know, but this is—that's the question of the merits. Maybe this statute is perfectly fine when you get to the merits, whereas the one I hypothesize would be totally unconstitutional. But that's the question of is it unconstitutional or is it not unconstitutional when you get to the merits. The question is the plaintiff contends that this is unconstitutional as only—it's either constitutional or it's not. So if it's unconstitutional, it's just as unconstitutional as a racist statute. And they're saying it's unconstitutional, and you're saying we can't even touch that in federal court because it would give the surrogates court one less function than it has been given? Well, it's also a matter of—that's one of the reasons, but it's also as the enforcement would necessarily involve—you know, that would not necessarily be how it would be resolved by just foregoing the surrogates court's procedures. They could try to implement or interpret 17a in a manner that attempts to comply with the federal court injunction or ruling, and then depending on whether the federal court thinks that the surrogates have correctly met that threshold, then you would be going back to the federal district court for it to review whether the surrogates have properly met the threshold set by the federal court, and that offends the basic principles of federalism that are represented in abstention doctrines because you have the lower federal courts supervising state courts, which are courts of equal dignity under the federalist system. I know I'm well over time. Can I address standing? Anything else on Younger? I think I hit my points, unless you have any other questions. Go ahead. On standing, plaintiff is a private, not-for-profit corporation. It's a non-membership organization. It does not assert an injury to itself as an organization. It does not assert an injury to a member of its organization. It does not assert an injury to a constituent with indicia of membership in the organization. Rather, it relies solely on Congress's DD Act, which authorizes them to advocate on behalf of disabled persons. Which you are saying is unconstitutional as a violation of Article III. I'm not saying it's unconstitutional. I'm saying it can— Yes, you are. Congress says they can pursue legal remedies on behalf of third parties. They come in, and that's exactly what they're doing. They're asserting a legal remedy on behalf of a class of third parties, and you say, and I don't know why you'd shrink from it, that they just can't have that kind of standing to do that. Yes. To that extent, it's unconstitutional. They can do other things, maybe. If you frame it that way, yes, I agree. And all the courts that have considered this issue, whether the Act by itself confers standing, have said no. Even the circuits which have incorrectly held that P&A systems have standing to bring suit have rejected arguments that the Act by itself, by authorizing the organizations to bring suit, that that by itself is enough. The courts have said that may satisfy prudential requirements but does not satisfy the constitutional requirement of an Article III injury. Okay, so what is—and their argument is, and I'd like you to respond to it because I'm just puzzled by this whole business. They say, well, there is an injury to these various people who are subjected to Article 17A. And so all we're doing is representing them, in effect, like a class plaintiff or somebody else who doesn't have individual standing to bring a claim on behalf of everybody else who suffered similarly but is authorized to do that by Rule 23. They're saying this is like Rule 23 except instead of setting up a system for a class representative to represent the class, it lets us do that. Well, I have a few responses to that. If I can first go to United Food, the main precedent they rely on, which gave unions a statutory cause of action under the Warren Act to get back pay when a plant closed early and they don't comply with Warren. And what the court held there is that the statutory authorization can eliminate the prudential aspect of the Hunt test, which is whether an individual needs to participate, which is similar to Rule 23, but that it doesn't abrogate the constitutional requirement of an injury. In Rule 23, you need to have a representative with an injury. Right, but what Ms. Munthy said was, but these people do have an injury, and you're saying they don't? I'm not saying they don't. I'm saying that DRNY does not have a sufficient relationship with those people to satisfy the constitutional requirements that they can rely on the injury to those people. And that's not prudential. That's constitutional. That is constitutional. That's what United Food held, and it said the reason is sort of the principal requirement of Article 3 is ensuring that there's an adequate controversy between both sides. And in another context, the Fair Housing Act context, you still have to have an injury, which is what the Havens Realty— Right, and that is governed by Hunt and its progeny. And what you have here is you have to establish— No, wait, but Hunt is specifically about the problem of associational standing, and I agree. That seems to cover the union. It seems to cover trade organizations. In Hunt, it sort of covers the state agency that is acting on behalf of the apple growers. I get that. But the class plaintiff, the class members aren't members of his union. The class plaintiff is just a person who's one of the members of the class. And so there's this representational idea, which I think the plaintiff here is saying is different from membership-type associational standing. Right, so there's different doctrines where a party can represent the interests of a third party. And in all of those contexts, there are two routes to establish an injury. You can establish a direct injury to the plaintiff itself and rely on the rights of a third party. So there's a distinction between injury and rights that we need to be clear about. There's a kind of third party standing which is like the bar owner in Craig Against Warren who says, I'm losing money because the state is discriminating against young men who'd like to buy beer as distinct from young women. The plaintiff has his own injury, but the right he's relying on is the right of the third party.  Right. So that's one scenario, and they don't purport to establish any direct injury. So then that leads to, as an association, which has been the rubric that every circuit court, including this court and disability advocates, has used to analyze whether P&A systems or their contractors have standing. That's the rubric for assessing the relationship between the named plaintiff and the party whose injury and rights, not just their rights, but their injury and rights they purport to rely on. Does it matter in this analysis that unlike a union or unlike a trade association, the people on whose behalf the disability, the protective system is coming in to represent don't have any control, don't have any vote, don't have any input into the actions of the person or institution advocating on their behalf? Is that the problem? Right, yes. So that's under the indicia of membership test that's used to assess the relationships. There has to be some sort of input control representation, and other circuits have looked at the sort of statutory features of P&A systems. Other cases have included evidence and affidavits and allegations about who they purport to represent and their relationship. Disability advocates, this court noted that disability advocates did not purport to have any sort of active consultation with his memberships, and that's squarely... I had a case with disability advocates where the whole case was overloaded. It was on behalf of prisoners who had mental illnesses, and the state didn't raise any objection to their standing, but the case was like overloaded with actual prisoners who came in to testify, who were exemplars in the complaint of the kind of thing that disability advocates was using, and that's something that's missing here. Right. I mean, that's definitely a difference. The allegations of standing here are very threadbare. It's just a few paragraphs. Suppose they did that. Suppose they amended their complaint and said, we've got John Jones and Jane Doe and Ellen Smith and their people who we've talked to, and they're subject to these 17A guardianships, and their rights were violated in the following ways, and we're here on their behalf bringing this suit. Would that cure the problem? That might cure the standing problem in the sense of having an individual with a live controversy, but it would make the case for abstention all the more clear, because they would be participants in ongoing Article 17A proceedings. Would there be ongoing proceedings? I thought after the guardianship is established, it's there forever, at least unless that person comes back to court and institutes a lawsuit. The court maintains ongoing jurisdiction to modify the court order, and it's typically done if someone requests it, but the surrogates have the authority to modify and have done so in New York County where they require ongoing reporting requirements from Article 17A guardians and then review those, so it's an ongoing proceeding until it is closed. Maybe you could address one interest of mine, which is Ms. Monty's description of the charter, as it were, bestowed upon her organization by federal statute. It seems to me that if you prevail on standing, aren't you effectively giving her representation as to what their job is or their competence is? Wouldn't you effectively be putting them out of business? No, because they can still represent individuals in individual proceedings, and in Disability Advocates, this court said that the fact that Disability Advocates did not have standing did not preclude them from fulfilling their mandate, because they could fulfill their mandate to advocate on behalf of disabled people by pursuing those remedies in individual proceedings with actual concrete cases and controversies. And those could be in the federal court? Yeah, in certain circumstances, yes. They could have the sequelae that you're concerned about, ongoing supervision by the federal court of whatever decree emerges from such an action. I'm sorry, could you? Well, if there is such an action in behalf of an individual and the individual prevails, presumably the federal court would have continuing jurisdiction, or perhaps having entered an injunction, it would have the same, it would raise the same younger problems that you're concerned about. Yes, yes, that's correct. There's an interrelation between the standing and abstention problems here. Thank you very much. Ms. Monty, you've reserved some time. Thank you, Your Honor. I just have two points that I'd like to address. The first is I want to make clear that Disability Rights New York is not relying upon associational standing to bring this claim. What I'd like to point you to is the United Food case and the discussion about prudential or not for that connection between the membership organization and the entity. So while Disability Rights New York is not claiming any affiliation to a membership, footnote six of the decision made clear that the court acknowledged that Congress may definitively declare a specific relationship or a particular relationship sufficient. So if this court is looking for how do you have a connection between the people that Congress charges you with representing, and that is somehow beyond the bounds of associational standing, that is a constitutional mandate, it does so through statute, and the Supreme Court acknowledged that the Congress can do it through statute. It cited to other organizations like fair housing organizations that can bring claims on behalf of people that find violations in the Fair Housing Act, the EEOC, the Attorney General. It said, look, Congress has to be able to make this relationship work because otherwise how do we find standing in all of these other cases? The next point I did want to address, Your Honors, a point about reorganization. There is no need for reorganization because people with intellectual and developmental disabilities can be brought before either court. They're already being brought before 81. So a removal of 17A doesn't reorganize the system. It just creates the one pathway that exists through the Supreme Court. Thanks very much. We'll reserve the decision and we will have a brief recess and we will reconvene with a slightly altered panel. Judge Corman will join us for the regular day calendar at 1130. Thank you.